68155. ZELLERS et al. v. THEATER OF THE STARS, INC.

CARLEY, Judge.

Appellants Ronald and Claira Zellers attended a performance sponsored by appellee Theater of the Stars which was held in the Atlanta Civic Center (Civic Center). At the conclusion of the performance, appellants exited the Civic Center auditorium and began to depart the building through a bank of glass doors. As appellant Ronald Zellers reached for the door handle, his hand slipped and hit the glass, causing the glass to shatter. Appellants initiated suit against the City of Atlanta and appellee, alleging negligence and nuisance. Appellant Ronald Zellers sought damages for personal injuries sustained as a result of the incident, and appellant Claira Zellers sought damages for loss of consortium of her husband, Ronald Zellers. The trial court granted summary judgment to appellee. Appellants appeal.

1. Appellants contend that a question of fact remains as to whether appellee, as an occupier of the Civic Center, failed to exercise ordinary care in keeping the premises and approaches safe for its invitees. The evidence of record shows that the Civic Center was constructed in 1968, at which time plate glass doors were utilized in the building. In 1970, a law was enacted whereby it became unlawful "knowingly to sell, fabricate, assemble, glaze, install, or consent to be installed any glazed structure, product, or material to be used in any hazardous location if said product, material or structure contains any glass or glazing product other than safety glazing material." OCGA § 8-2-91. Since 1970, all broken plate glass doors in the Civic Center have been replaced with safety glass. However, no plate glass door has

ever been replaced in the Civic Center unless first broken. It was not established whether the door at issue in the instant case was the original plate glass or safety glass. Therefore, it will be assumed on appellee's motion for summary judgment that the door contained plate glass. There was, however, affixed to the glass door a triangle safety decal. The evidence further showed that appellee had rented the Civic Center auditorium for approximately six weeks of each year for the past thirteen years prior to the incident giving rise to the instant appeal. At no time had appellee made an inspection of the Civic Center. Prior to appellant Ronald Zellers' injury, appellee had no actual knowledge of any glass door ever having been broken in the Civic Center.

On this evidence, it is appellants' contention that by maintaining doors which were constructed of plate glass, appellee failed to exercise the ordinary care owed to its invitees. Appellants further assert that appellee breached its duty by failing to inspect the property in order to determine whether there were any dangers or defects that would injure its invitees and by failing to warn its invitees of the dangers of the plate glass doors.

"Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe." OCGA § 51-3-1. "(A)n owner or occupier of land is liable to invitees for injuries they sustain as a result of his failure to warn them of dangers *which he was aware of, or in the exercise of reasonable care should have known.* [Cits.] However, a person is not expected to foresee and warn against dangers which are not reasonably expected, and which would not occur except under exceptional circumstances or from unexpected acts of the person injured. [Cit.]" (Emphasis supplied.) *Sutton v. Sutton,* 145 Ga. App. 22, 24-25 (243 SE2d 310) (1978). "The true ground of liability of the owner or occupant of property to an invitee who is injured thereon is the superior knowledge of the proprietor of the existence of a condition that may subject the invitee to an unreasonable risk of harm." *Gibson v. Consolidated Credit Corp.,* 110 Ga. App. 170 (2a) (138 SE2d 77) (1964). See also *Swanson v. Choate,* 108 Ga. App. 152 (132 SE2d 246) (1963).

Although it is undisputed that appellee had no actual knowledge that anyone had ever been injured in the Civic Center by the breaking of the glass doors, appellants attempt to impose upon appellee what they term "statutory notice" that the plate glass door constituted a "dangerous location." Appellants contend that the passage of Ga. Laws 1970, p. 151, § 1, as codified in OCGA § 8-2-90 et seq., placed appellee on notice that any non-safety glass door is dangerous and defective. However, by its very terms, OCGA § 8-2-90 et seq.

merely made it unlawful to "sell, fabricate, assemble, glaze, install or consent to be installed" any other glass other than safety glass in certain buildings. Appellee did none of these, but only leased a building in which non-safety glass had been lawfully utilized in its initial construction prior to the passage of this statute. We find that, as a matter of law, appellee was not put on notice, "statutory" or otherwise, that the door at issue constituted a "dangerous location" by virtue of the enactment of OCGA § 8-2-90 et seq. Cf. *Newburn Healy Real Estate & Improvement Co.*, 17 Ga. App. 217 (86 SE 429) (1915).

2. Appellants further assert that appellee breached its duty to inspect the leased premises and approaches to discover and to warn of the existence of the dangers of plate glass doors. " '[OCGA § 51-3-1] places upon [an] owner or occupier of land the duty to exercise ordinary care, for the safety of his invitees, in discovering defects and dangers in the premises or instrumentalities thereon, and imposes a liability for injuries resulting from such defects as a reasonable inspection would disclose. Such owner or occupier of land is liable for failure to warn his invitees of dangers or defects in such premises or instrumentalities, of which he knew or of which it was his duty to know in the exercise of ordinary care.' " *Fuller v. Louis Steyerman & Sons*, 46 Ga. App. 830, 834 (169 SE 508) (1933).

In the instant case, appellee had no actual knowledge prior to the incident at issue of any glass door in the Civic Center ever having been broken. "There is nothing in the evidence to show or indicate the necessity of making such an inspection to ascertain the possible or probable existence of any defect, such as that other people had [broken the glass doors]. Ordinary diligence, under such circumstances and the facts of this case, did not require an inspection where [appellee] had no reason to think an inspection was necessary. [Cits.]" *Roberts v. Wicker*, 213 Ga. 352, 356 (99 SE2d 84) (1957). See also *McLaury v. McGregor*, 110 Ga. App. 679 (2) (139 SE2d 444) (1964); *Hood v. McCall Clinic*, 145 Ga. App. 314 (243 SE2d 571) (1978); *Hughes v. Winn-Dixie Stores*, 142 Ga. App. 110 (253 SE2d 619) (1977).

3. Appellants assert that the trial court erred in granting appellee's motion for summary judgment on appellants' claim of public nuisance. Appellants allege that the maintenance and operation of the plate glass doors in the Civic Center constituted a public nuisance that was the proximate cause of appellants' injuries.

"A public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals." OCGA § 41-1-2. " 'This language is not used in the sense that *every person* in the area must have been actually hurt or injured in order to show a public nuisance . . . It is sufficient if it injures those of the public who may actually come in *contact* with it. [Cits.]

A public nuisance exists if the act complained of affects rights which are common to all within a particular area. [Cit.]' [Cit.]" (Emphasis in original.) *Abee v. Stone Mtn. Memorial Assn.*, 169 Ga. App. 167, 171 (3) (312 SE2d 142) (1983).

During his deposition, the producer of appellee stated that the normal method for leaving a performance in the Civic Center auditorium was to exit through the bank of glass doors at issue. Appellee had no knowledge of any of the glass doors ever having previously been broken. The performance following which appellant Ronald Zellers was injured was attended by approximately 3,000-3,800 people. "Inasmuch as a public nuisance must injure *all* members of the public who come in contact with it, [the evidence] to the contrary effectively erased [appellants'] public nuisance cause of action. The trial court correctly granted summary judgment to [appellee.]" *Abee v. Stone Mtn. Memorial Assn.*, supra at 171-172.

4. Appellants lastly assert that appellee breached its duty to exercise ordinary care in keeping the premises and approaches safe by failing to have medical assistance and transportation available at the performance.

Assuming without deciding that appellee had a duty to have medical assistance and transportation at the performances it sponsored at the Civic Center, appellants alleged no damages caused by the breach of duty, nor is there any evidence of any such damage. Both appellants stated in their depositions that within a matter of seconds after the breaking of the glass, appellant Ronald Zellers was treated by Dr. Savage, who had attended the performance and had been exiting immediately behind appellants. An ambulance was summoned and arrived at the Civic Center in approximately five minutes. However, appellants chose not to wait for the ambulance, but drove with Dr. Savage to Grady Hospital in the Zellers' automobile. Appellant Ronald Zellers stated that he did not wait at the Civic Center for any period of time in anticipation of first aid. Approximately ten minutes passed between the time the injury was sustained and the time treatment was rendered at Grady. Sometime after arriving at Grady, appellants decided that they preferred that the repair work to the cut artery be done at Northside Hospital, because they were more familiar with that hospital. Appellant Ronald Zellers was transported by ambulance to Northside Hospital.

We find that appellants have failed to allege any injuries caused by appellee's alleged failure to have medical assistance and transportation available. The trial court properly granted summary judgment to appellee. See generally *Campbell v. Southern Bell Telephone &c. Co.*, 161 Ga. App. 589 (288 SE2d 919) (1982).

*Judgment affirmed. Quillian, P. J., and Birdsong, J., concur.*

DECIDED JUNE 28, 1984.

*D. R. Jones, D. Richard Jones III, Reagan W. Dean*, for appellants.

*Clyde E. Rickard III, Kendric E. Smith*, for appellee.